Montgomery *against* Poorman.

A justice of the peace has not jurisdiction of a cause of action against another justice of the peace for money collected in his official capacity.

ERROR to the common pleas of *Westmoreland* county.

Peter Poorman's Executors against Robert Montgomery, Esq.

The defendant was a justice of the peace, and this action was brought against him to recover money which he had collected in his official capacity for the plaintiffs. The defence was, the justice of the peace before whom the action originated had not jurisdiction; that the only remedy for the recovery of the money, was that afforded by the act of the 28th of March 1820.

The court below was of opinion, that the remedy under that act was cumulative, and not exclusive, and permitted the plaintiff to recover. This opinion was assigned for error.

*Beaver*, for plaintiff in error:

1st. The civil jurisdiction of justices of the peace, is altogether derived from statutes; they have no common law jurisdiction in civil cases. The act of the 20th of March 1810, confines the civil jurisdiction of the justice of the peace, to " causes of action arising from contract express or implied," not exceeding 100 dollars. The act of the 22d of March 1814, gives them jurisdiction in actions of trover and conversion—trespass for the recovery of damages for injury done or committed on real and personal estate, and actions for rent in all cases, not exceeding 100 dollars. In the present case, the court below supported the jurisdiction of the justice, on the ground of contract implied, between a magistrate and a suitor before him, which is directly opposed to the principle of the case of Ziglar *v.* Gram, 13 *Serg. & Rawle* 102. This court held, in that case, that, the legislature had in view a contract in the popular sense of the word, and not an artificial agreement, depending on a fiction of law. This is a special action on the case, for what is substantially a tort, and was not a subject for the jurisdiction of a justice. Zell *v.* Arnold, 2 *Penns. Rep.* 295. If the justice had not jurisdiction, the whole proceeding was, *coram non judice*, and it was not necessary to plead it before verdict. Moore *v.* Wait, 1 *Binn.* 219.

2d. The notice indicated by the act of the 21st of March 1772, was necessary, and without which the plaintiff could not recover. By the 11th sect. of the act of the 20th of March 1810, the justice was bound to receive the amount of the judgment (before execution) if offered, by the defendant, and to pay the same over to the

[Montgomery v. Poorman.]

plaintiff, or his agent, and his refusal to pay on demand, the money so received, to the plaintiff or his agent, was a misdemeanor in office. Plaintiffs' narr charges defendant as a justice of the peace, with the receipt of the money in his official capacity, and alleges the defendant's liability by force of the act of assembly in such case made; setting forth a demand by the plaintiffs, and a refusal by the defendant, and damages incurred by the plaintiffs, in consequence of the defendant's refusal to pay over the money received by him as a justice of the peace, and thus charging the defendant with malfeasance in office, it entitles him to notice, previous to suing out the writ. Wise et al., administrators of Greigor *v.* Wills, 2 *Rawle* 208; Mitchell *v.* Cowgill, 4 *Binn.* 24. The defendant had a general jurisdiction over the subject, and acted as magistrate; therefore, he was entitled to notice. Jones *v.* Huges, 5 *Serg. & Rawle* 301. No case can be produced, where a notice was more necessary than the present, since the dispute arose out of the fact, (which appears in the record) that the plaintiffs actually received part of the amount of the larger judgment from Samuel Buzzard, the defendant in the judgment, the receipt for which is so obscure, as to render the amount received by him doubtful. If it was official misconduct on the part of the defendant, to refuse, under the circumstance, to pay over the balance of the money to the plaintiff on demand, yet that refusal of the defendant is the subject-matter of the present suit; therefore, he was entitled to notice. Prior *v.* Craig, 5 *Serg. & Rawle* 46.

3d. In cases where a remedy is provided by any act or acts of assembly, there, the common law remedy is excluded; in the act of 1806, sect. 13, it is not confined to cases of penalties, but extends to civil proceedings also. Wike *v.* Lightner, 1 *Rawle* 289; Hellings *v.* The Commonwealth, 5 *Rawle* 68. The act of the 28th of March 1820, gives a summary remedy against justices of the peace, or aldermen, who shall receive the amount of a judgment rendered by them, or any part thereof, and refuse to pay the same over to the plaintiff or his agent, or the person to whom it is owing—first, for a misdemeanor in office, and besides the remedy for such misdemeanor, the party aggrieved may petition, &c. The statute contains a general regulation of the whole subject-matter: therefore, by the provisions of the act of 1806, the remedy thus provided is exclusive. 14 *Serg. & Rawle* 406.

4th. The action of *assumpsit*, for money had and received, never was a common law remedy to compel the performance of an official duty, or payment of money received by a judicial magistrate, in a judicial capacity. The remedy given by common law courts, against the judges of subordinate courts in such cases, was either by a writ of "*procedendo* or *mandamus*," 3 *Bl. Com.* 106; *Conductor Gen.* 236. Money received by a justice of the peace by virtue of his office, is in the custody of the law, and he has a judicial discretion over it, for the advancement of justice, for it very

VI.—2 Y

[Montgomery v. Poorman.]

frequently happens, that the plaintiff on the docket is not entitled to the money when collected. Where there was nothing wrong in the receipt of the money, in the first instance, nor privity between the owner and receiver, *assumpsit* will not lie. Rapelye *v.* Emory, 2 *Dall.* 54; *Cowper* 200. The common law never allowed the presumption, that a private concurrence or contract existed between the judge and the suitor, and it is held in this court, that the law will not presume that a justice of the peace acted as agent for a party before him. Boyers *v.* Potts, 14 *Serg. & Rawle* 157. Nor could he act as agent for a suitor before him, without being guilty of a high misdemeanor. *Ibid.*

5th. The docket entry of the execution, and the receipt for the debt and costs from the constable by the defendant, were not proper evidence to go to the jury, until the legal ground for the introduction of secondary evidence had been laid by the plaintiff.

6th. The evidence contained in the first bill of exceptions, was erroneously admitted by the court below. The act of the 21st of March 1772, is peremptory, that no evidence shall be given by the plaintiff, on the trial of any action, grounded on any act of the defendant, as a justice of the peace, for any thing done by him in the execution of his office, unless it is proved upon the trial, that notice was given of the intended suit or action, at least thirty days before suing out the writ, but in default thereof, such justice shall recover a verdict and costs. No such notice was proved by the plaintiff to have been given; therefore, the evidence should have been rejected by the court below, and the jury directed to return a verdict for the defendant.

*Foster*, for defendant in error, cited 2 *Rawle* 208; 5 *Serg. & Rawle* 46, 299.

The opinion of the Court was delivered by

ROGERS, J.—The 11th section of the act of the 20th of March 1810 directs, that every justice of the peace who renders judgment shall receive the amount of the judgment, if offered by the defendant or his agent before execution, and pay the same over to the plaintiff, or his agent, when required. For this service, the justice is allowed a reasonable compensation, and his neglect or refusal to pay over the money on demand, is declared to be a misdemeanor in office. The nonpayment of the money is a breach of an official duty, and therefore is not embraced in that act, which confines the civil jurisdiction of the justice to causes of action arising from contract, express or implied. In general, the action for money had and received, is not a proper remedy at common law, to compel the performance of an official duty, although in some cases he is undoubtedly liable to action, at the suit of the party aggrieved. 2 *Rawle* 208; 5 *Serg. & Rawle* 48. The remedy against judges of inferior courts, is either by writ of *procedendo* or *mandamus*. 3 *Bl.*

[Montgomery v. Poorman.]

*Com.* 109. In Zeigler *v.* Gram, 13 *Serg. & Rawle* 102, it is said, that in jurisprudence the word contract is generally used to denote a bargain or agreement, and it was plain that in the acts of assembly (referring to the acts giving jurisdiction to justices of the peace) it was used in that sense by the legislature, which had in view those contracts which arise immediately out of a course of dealing between the parties, and not that sort of contract which arises remotely out of a compact of government. For this reason (although every debt may be said to arise out of a contract, either express or implied) it was held, that a justice of the peace had not jurisdiction of debt for the penalty imposed by the act of the 13th of April 1791, for not entering satisfaction of a judgment. The legislature had in view a contract in the proper sense of the word, and not an artificial agreement, depending on a fiction of law. 2 *Penns. Rep.* 295. The gravamen of the action, here, is the nonperformance of an official duty; for the act makes it the express duty of the justice to pay, as well as to receive. Under such circumstances, it would require a strong indication of intention, on the part of the legislature, to induce a belief that they designed to give one justice of the peace jurisdiction to pass upon the official conduct of a brother justice. No possible good can result from such a construction, although it is easy to anticipate many evils, which would arise from it. But however this may be, on general principles, yet since the act of the 28th of March 1820, it is clear a justice has no jurisdiction of the matter. The latter act not only makes the refusal to pay a misdemeanor in office, and as such an indictable offence, but it gives the party aggrieved a remedy by petition, to the court of common pleas of the proper county where the justice resides. The acts are in *pari materia*, and when an act or acts prescribe a new official duty to a magistrate or other public functionary, and give a remedy, that remedy must be pursued, as well upon the principles of the common law as on the plain directions of the act of 1806. There is but little weight in the argument drawn from the word "may," for that word is often rendered shall. Shaeffer *v.* Jack, 14 *Serg. & Rawle* 429, and the authorities there cited. Besides, there are reasons derived from the act itself why the remedy therein pointed out should be pursued; for in the event of an issue, the court before whom the issue is tried have power to decree touching the costs of the issue, as to right and justice shall appertain. And this is a benefit of the justice of which he would be wholly deprived, if the action for money had and received on an implied contract, could be sustained. The justice would be mulcted in costs even when he acted under a reasonable apprehension that the party who demanded the money was not entitled to receive it. Nor would he have any opportunity of tendering amends, for the court were of the opinion that no notice was necessary before the commencement of the suit. The act of the 28th of March 1826, is most comprehensive, for it extends to all cases where any alderman or justice of

the peace shall receive the amount of a judgment rendered by him, or any part thereof, and shall refuse to pay the same over to the plaintiff, or his agent, or the person to whom it is owing.

Judgment reversed.